HUDSON *v.* HUDSON, administrator.

1. A son breaking up at home and removing himself and family to the residence of his infirm father, upon an express promise by the latter to will him his home-place if he would attend to and take care of him for life, and performance by the son but failure to perform by the father, who became and died insane, would entitle the son to recover of the father's administrator upon a *quantum meruit.*
2. No change in the original contract would result from an agreement made by the children after the father became insane.
3. The son is a competent witness in his own favor to answer the testimony of the administrator (his brother) as to what occurred between them before the death of their father.
4. The evidence not being full and specific as to rents, etc., for which the plaintiff ought to account, there was no error in granting a new trial.

July 20, 1891.

Contracts. Parent and child. Administrators. Witness. Evidence. New trial. Before Judge BOYNTON. Rockdale superior court. August term, 1889.

Reported in the decision.

GEORGE W. GLEATON, for plaintiff.

A. C. McCALLA and J. N. GLENN, for defendant.

LUMPKIN, Justice.

1. An old and infirm father proposed to one of his sons that if the latter would remove from his own home to that of the former, and attend to and take care of him during his lifetime, he would will to the son his home-place. The son accepted this offer, and according to the evidence, complied faithfully with his part of the contract. Sometime after his removal to his father's place, the old man became insane, and remained in that condition until his death, so that it was impossible for him to make the promised will. Nevertheless, the son continued his ministrations until the father's death. The old man required constant nursing and attention. Most of the time he was altogether as helpless as an

infant, and the care of him involved considerable time, watchfulness and labor, and the performance of services menial and disagreeable in the highest degree. From all the circumstances shown by the proof, it is perfectly manifest that when the arrangement between the father and son was originally entered into, both parties contemplated that the son would be entitled to and should receive compensation for his services, and it was not a case in which it was expected that these services would be performed on account of mere filial duty and affection.   It also appears that the son received $96.00 per year, which came to the father as a pension from the government, and that he received and used the rents, issues and profits of the father's land and stock thereon, in excess of what was required for the father's support.   It was certainly not incumbent on the son, after the father became insane and consequently incapable of making the promised will, to abandon his part of the contract; but he had the right, and it was his duty, to continue taking care of his father as he had agreed to do.   The latter having become unable to comply with his part of the contract, the son had a right to regard it as one that never could be literally performed, and the existing circumstances were such as to justify him in continuing to render the necessary services to his father, with the right to be paid for the same.   Indeed, it was held in Lisk *v.* Sherman, 25 Barb. 433, a case very similar so this, that the plaintiff was entitled to recover only the actual intrinsic value of the services rendered, for the time they were rendered, and according to their kind and character, without reference to the contract or the value of the property which deceased had agreed to leave him as compensation for such services.   Again, in Graham *v.* Graham's Executors, 34 Pa. St. 475, it was held that a parol contract of a decedent to give to the plaintiff a certain portion

of his estate in consideration of services rendered, could only be enforced when clearly proved, and when its terms were distinct and certain; and also, that the measure of damages for the breach of such a promise was the value of the services rendered, and not the proportion of decedent's estate promised to be given. See, also, Thompson *v.* Stevens, 71 *Ibid.* 161.

If, by a proceeding in the nature of a bill to compel a specific performance of the father's contract, the plaintiff would be entitled to recover the home-place from the administrator of his father, he would of course be obliged to account for what he had already received in money, rents, etc., during the lifetime of the deceased. This being true, and it being manifest from the evidence that the son is undoubtedly entitled to compensation in some way for his services, it seems the fairest and best way of adjusting these matters is to allow the son to recover of the administrator, upon a *quantum meruit*, the actual value of his services, but the amount must in no event exceed the value of the home-place, and he must account for and have deducted, from the full amount he is entitled to, all he has received from the property of the father over and above what was necessary for the support and maintenance of the latter during his lifetime. The above authorities sustain the propriety of giving this direction to the case. By his declaration as amended, the plaintiff simply seeks to recover what his services were worth, and after much consideration we regard this as the proper and legal way to solve the problem, and accordingly, so direct.

2. It is manifest, without discussion, that whatever may have been the original contract between the father and son, it could not be changed by any agreement or understanding, if there were such, made by the children after the father became insane.

3. The plaintiff was a competent witness in his own

favor to answer the testimony of the administrator concerning matters which occurred between them before the death of the father, not in the presence of the latter, and in which he did not in any way participate.

4. On the trial the jury returned the following verdict: " We, the jury, find for the plaintiff, above what he has already received · from all sources, the sum of $600 principal, and interest $119." The court set this verdict aside and granted a new trial. The evidence does not accurately disclose what the rents, etc., which the plaintiff had received amounted to, and it is therefore impossible to determine from the record upon what basis of calculation the jury arrived at the amount they found in favor of the plaintiff. For this reason, we will not interfere with the discretion of the trial judge in granting a new trial, but will allow the judgment of the court below to stand, and the case to be again tried with such light thrown upon the law of it as may be gathered from the head-notes and this opinion.

<em>Judgment affirmed.</em>