### 26044. McELROY *v.* LAMBERT, executor.

DECIDED JULY 3, 1937.

*O. J. Coogler,* for plaintiff.   *J. E. Mundy,* for defendant.

GUERRY, J.   This is an action by J. D. McElroy against C. L. Lambert, as executor of the estate of J. F. Lambert, to recover for certain services rendered and goods furnished to the deceased during his last illness.   The petition alleged in substance that J. F. Lambert died on December 24, 1932, leaving an estate of $5000; that he was a widower with a large family of children, all married and living apart from him except one daughter; that the plaintiff married one of the deceased's daughters; that the deceased was taken sick in 1931, and was alternately taken care of by his children until he became so feeble in body and mind that it was the expressed desire of all to have some one go to his home and provide there the necessary care and attention for him; that on or about July 11, 1931, the plaintiff, at the expressed desire of the deceased's children, moved into the home of the deceased, undertaking at the time the care and attention of the deceased that were necessary to his age and the condition of his health and mind; and that he made all necessary provision for the care and comfort of the deceased from said date to on or about December 24, 1932.   The prayer was for recovery of $1750 for personal services rendered by plaintiff to the deceased, nursing and other services, and $539 for goods and supplies furnished to the deceased. It appears from an exhibit attached to the petition that the plaintiff actually furnished to the deceased goods, etc., in the sum of $1151.05, but there was a credit on this amount of $612.05, which represented income of the deceased and contributions of the family. The $1151.05 represents money paid out for nurses, medicine, washing, clothes for the deceased, repairs on the house, and other miscellaneous items.   The defendant filed an answer denying the justice, fairness, correctness, and truth of the account as attached to the petition, and made specific denial that any sum was due for services of the plaintiff to the deceased, but admitted that items for drugs, medical attention, clothing, laundry, nursing, and miscellaneous supplies were just and correct.   The defendant also pleaded a set-off, alleging that the plaintiff was indebted to the deceased on a note for $550 with interest at 8 per cent. since December 6, 1919, amounting to $1259.50.   To this set-off the plaintiff filed a plea of payment.

It appears from the evidence that at the beginning of the deceased's illness his daughter, Mrs. Jenkins, and her husband were living in his home with him; that they left, and the deceased was taken to the home of Chester Lambert, a son; and that several weeks thereafter, at the request of the family of the deceased, the plaintiff and his wife moved into the deceased's home. This was about July 10, 1931. At this time he was sick both mentally and physically. The plaintiff provided a nurse for the deceased during this time in the day, and he usually took care of him at night. The deceased was so afflicted that he had no control over his bowels or urine, and it was necessary for the plaintiff to change his clothes and bedding, and wash him frequently at night. The plaintiff and his wife described the odor and the inconveniences to their home life in having to care for her father, which we do not think necessary to set out in detail. The deceased was up and about a little during his long illness, except two or three weeks immediately before his death; but because of his mental condition he had to be watched very closely. The plaintiff's wife testified: "I don't know that I ever told any of my brothers and sisters that my husband expected to collect a hundred dollars a month for services rendered to my father during that time. No, I never did." The plaintiff testified: "All during this seventeen and a half months that I lived in the house with Mr. Lambert I never at any time communicated my intention to the heirs generally that I expected any compensation for my services. That was communicated before I ever went down there. There was a petition gotten up, went around there, and tried to agree on paying me a hundred dollars a month to go down there and take care of him. That didn't go through. I went on, knowing that wasn't agreeable. As to whether I went down there knowing that the heirs wouldn't agree to pay it, yes, I knew they couldn't get them to pay anything. I didn't tell them that I was going to charge a hundred dollars a month for my services."

The jury returned a verdict in favor of the plaintiff for $750. He filed a motion for new trial, and excepted to a judgment overruling the motion. One of the errors assigned is that the court erred in not instructing the jury, without request, that they should find interest on whatever amount they found to be due. The answer of the defendant admitted liability to the plaintiff

for $539, which represented money paid out on behalf of the deceased. This was therefore a liquidated demand, and the jury should have allowed interest thereon. The remaining item of $1750, for services performed by the plaintiff in nursing and caring for deceased, was not recoverable under the evidence. This being a suit by a son-in-law against the estate of his deceased father-in-law, for services rendered in caring for the deceased in his last illness, which services consisted in nursing and attention, and no express contract being shown between the plaintiff and the defendant, providing for compensation for such services, it is necessary for the plaintiff to show that a contract to pay arose by implication. "Ordinarily, where one renders in behalf of another valuable services which are accepted by the latter, the law raises in favor of the former an implied promise to pay for the same, although no formal or express contract to pay has been made. Where, however, the parties sustain towards each other the relation of parent and child, and the services performed are in the nature of care and attention bestowed by a son upon an old and infirm father, no such presumption arises by operation of law. In order, therefore, to sustain a recovery by the son for such services, it must affirmatively appear, either that they were rendered under an express contract that the son was to be paid for them, or the surrounding circumstances must plainly indicate that it was the intention of both parties that compensation should be made, and negative the idea that the services were performed merely because of that natural sense of duty, love and affection arising out of this relation." *Hudson* v. *Hudson,* 90 *Ga.* 581 (16 S. E. 349). The amount to be paid under such circumstances is on the basis of a quantum meruit. The principle stated in the *Hudson* case is equally applicable as between a son-in-law and a father-in-law. *Jackson* v. *Buice,* 132 *Ga.* 51 (63 S. E. 823). If the circumstances as shown by the evidence *plainly indicated* an intention present in the mind of the deceased, as well as in that of the plaintiff, that the plaintiff was to be compensated for his services, a recovery would be authorized. The petition alleged that the deceased had become so feeble in mind and body before the plaintiff moved into his home that he was in need of care and attention. The evidence of the plaintiff and his wife was that the deceased "was just mentally and physically all to pieces; that's

all;" and that "he was mentally incapacitated all during that time." Other witnesses testified that his affliction was mental as well as physical. The attending physician testified that "his mental condition wasn't such as to leave him by himself very much." Under such a state of facts the circumstances, instead of plainly indicating any intention in the minds of *both* parties, which is necessary to show an implied agreement to pay for services rendered, tend to indicate that one of the parties was unable to form such intention. It is therefore apparent that the evidence demanded a finding in favor of the defendant on that issue. The jury returned a verdict for $750. Under the evidence, the plaintiff was entitled to recover $539, plus interest from December 24, 1932. The error of the judge in failing to instruct the jury to allow interest on the amount found, if any, and the failure of the jury to allow interest, was harmless in view of the amount recoverable by the plaintiff under the evidence adduced, and the amount of the verdict; for the amount of the verdict is somewhat in excess of the $539 plus interest.

The remaining assignments of error are without merit. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., concurs. MacIntyre, J., dissents.*

MacIntyre, J., dissenting. I do not wish to commit myself to the principle that where it is shown that a person is merely "mentally and physically afflicted," this is proof, as a matter of law, that he was incapable of forming an intent and making a contract. There are decisions to the effect that in order to render an old and feeble person incapable of contracting because of mental disability, he must be "entirely void of understanding." *Barlow* v. *Strange,* 120 *Ga.* 1015 (48 S. E. 344) ; *DeNieff* v. *Howell,* 138 *Ga.* 248 (75 S. E. 202) ; *Bryan* v. *Bryan,* 139 *Ga.* 51 (76 S. E. 563). And that "weakness of mind not amounting to imbecility is not sufficient to warrant a jury in setting aside a contract, there being no proof of fraud or undue influence." *Johnson* v. *Coleman,* 134 *Ga.* 696 (68 S. E. 480) ; *Nance* v. *Stockberger,* 111 *Ga.* 821 (36 S. E. 100) ; *Kirk* v. *Kirk,* 123 *Ga.* 104 (50 S. E. 928) ; *Ham* v. *Preston,* 164 *Ga.* 683 (139 S. E. 421) ; *Maddox* v. *Simmons,* 31 *Ga.* 512 ; *Abercrombie* v. *Salisbury,* 67 *Ga.* 734. There is no testimony in this case that the deceased was entirely

void of understanding, or that his mental affliction amounted to imbecility; but on the contrary the evidence shows that he was not entirely void of reason and understanding. There is an exception to the failure of the judge to charge the jury that they should allow interest on any amount found to be due the plaintiff. As to the items expended by the plaintiff in medicine, nurses, etc., which are admitted by the defendant in the answer, interest is allowable as a matter of law; but as to the services rendered for which the plaintiff claims $100 per month, the court would have committed error in instructing the jury to allow interest from the date of the death of the deceased, for the reason that such sum was an unliquidated demand. I think the judgment should be reversed for the failure of the judge to charge that interest was allowable on the admitted items in the account expended by the plaintiff, as hereinbefore stated.