32225. FORTNER *v.* McCORKLE, administrator.

DECIDED NOVEMBER 20, 1948.

*Mitchell & Mitchell, W. B. Mitchell,* for plaintiff.
*John H. McGehee, T. Dickson Adams,* for defendant.

SUTTON, C. J. Mrs. Nina Gooden Fortner sued J. R. McCorkle, administrator of the estate of W. M. Fortner, in Upson Superior Court, for $2160 as the reasonable value of services rendered to the deceased prior to his death, and she alleged in her petition that the services, which are set out in detail in the petition, were rendered to the deceased for a period of 18 months preceding his death, and that she had expected to be paid for the services, and

that the deceased had accepted the services with the intention of paying the reasonable value therefor.

The testimony of Prentiss Fortner, husband of the plaintiff, and son of the deceased, indicates that his father began taking meals at his house in May, 1945, continued to eat there until November, 1945, and that about the time he started taking meals there he expressed a desire that the plaintiff be paid for her services to him, and she intended to charge him, and during this time she sometimes assisted him to and from the house for these meals, and on one occasion when he was sick for a week she prepared trays, and carried them to him, and during the time his father was taking meals at the home of witness, he said to witness that some arrangement had to be made to get someone to "see after him" and asked witness to move into the house with him; that in November, 1945, he and his wife moved into the house with his father, who at the time was bedridden for about 5 days; that one day before they moved there deceased expressed his desire that plaintiff be paid for what she had already done for him, but that from May, 1945, until the day before they moved in the house with him, nothing was said about charging him; that he and his wife lived in the house with deceased from November, 1945, until his death in November, 1946, during which time his wife waited on the deceased, prepared his meals, did his laundry; that his father was an aged and infirm man and was totally blind for 4 months prior to his death, during which time plaintiff attended him, that after they moved in the house with him a guardian, J. R. McCorkle, was appointed for him, that he overheard his father indicate to McCorkle that he wanted to pay plaintiff for what she did and suggested $3 or $4 per week; that a check was tendered to witness (it does not appear when), payable to him and the plaintiff, to pay plaintiff for her work, but that he burned it; that the work plaintiff did for his father was worth $30 or $40 per month; that sometimes after he came home at night, after midnight, he waited on his father some and in so doing he was just helping his wife out. On motion of defendant the testimony of Prentiss Fortner was excluded in its entirety.

Ferel Fortner testified that he was 15 years old and the son of Prentiss Fortner and the plaintiff, and was living with them from

May 15, 1945, until November, 1946, and that before they moved into the house with his grandfather, he had heard his grandfather say that he wanted plaintiff "to have pay for what she done for him," and that his mother waited on him for 18 or 20 months, beginning about March or April (1945), and that his mother had to cook for him, wait on him, change his clothes sometimes, and "did most of looking after him."

Mrs. Avis Whittle and Enoch Thompson testified in regard to the services rendered to the deceased by the plaintiff, this evidence being substantially the same as that of the husband and son of the plaintiff, and Thompson valued the services at $4 per day.

The plaintiff rested with the foregoing testimony, and defendant moved for a nonsuit, which was granted. The case is here on exceptions to the ruling in regard to the testimony of Prentiss Fortner, and to the judgment of nonsuit.

■ "Where a person not a party, but a person interested in the result of the suit, shall be offered as a witness, he shall not be competent to testify, if as a party to the cause, he would for any cause be incompetent." Code, § 38-1603 (4). "No agent or attorney at law of the surviving or sane party, at the time of the transaction testified about, shall be allowed to testify in favor of a surviving or sane party, under circumstances where the principal, a party to the cause, could not testify; nor shall a surviving party or agent testify in his own favor, or in favor of a surviving or sane party, as to transactions or communications with a deceased or insane agent, under circumstances where such witness would be incompetent if deceased agent had been principal." Code, § 38-1603 (5). The interest referred to above is a legal or pecuniary interest in the outcome of the suit. *Dean v. Dean*, 13 *Ga. App.* 798 (80 S. E. 25). Under the law of this State prior to 1943, the earnings of a wife were the property of her husband, and in order for the wife to maintain an action for same, it was necessary to show that the husband had consented for the wife to receive and retain her earnings. See *Gresham v. Stewart*, 31 *Ga. App.* 25 (119 S. E. 445), and *Leavell v. Leavell*, 67 *Ga. App.* 440 (20 S. E. 2d, 780). The legislature, in 1943, passed an act, providing that "A husband living with his wife shall not be entitled to, and shall not receive the salary or wages of his wife, except by

her consent." Ga. L. 1943, p. 316, Code (Ann.), § 53-512. A question as to the meaning of this act was certified by this court to the Supreme Court in *Martin* v. *Gurley,* 201 *Ga.* 493 (39 S. E. 2d, 878), and in answering the question that court said: "If the husband is not entitled under the act of 1943 to the salary and wages of his wife except by her consent, certainly he cannot sue for and recover such salary and wages, unless the wife had consented for him to receive such salary and wages. The right of recovery would be in the wife, unless it be shown that she had consented for her husband to receive her salary and wages . . . The words 'permanent impairment to labor and earn money,' would be covered by the word 'wages' in the act of 1943, since 'wages' is generally construed as 'pay given for labor,' and would be a proper allegation in the wife's petition for the recovery of wages. 'Lost earnings' would include all salary and wages, but 'salary and wages' would not necessarily include all earnings." The present action being one by the wife for the reasonable value of services rendered by her to her deceased father-in-law, the measure of recovery therefor would be in the nature of "pay given for labor," and clearly comes within the meaning of wages as contemplated by the act of 1943, under the construction placed on the meaning of wages in that act in *Martin* v. *Gurley,* supra. This law eliminates the necessity of consent on the part of the husband in order to entitle the wife to bring an action for her wages, and also eliminates any direct legal or pecuniary interest of the husband in the action. In rendering the services on which this action is based, the wife was not acting as an agent for her husband. The ruling of the trial judge on the admissibility of the evidence of Prentiss Fortner was as follows: "I will have to exclude all of his testimony. He has a pecuniary interest in the outcome of the suit so we will have to exclude the testimony." Under the facts of the present case, and the law applicable thereto, the husband had no legal or pecuniary interest in the outcome of the case. Nor was he the agent of his wife in respect to the transactions to which he testified. Consequently, the trial judge erred in excluding the testimony of the husband.

■ "Ordinarily, where one renders in behalf of another valuable services, which are accepted by the latter, the law raises in favor of the former an implied promise to pay for the same,

although no formal or express contract to pay has been made. Where, however, the parties sustain towards each other the relation of parent and child, and the services performed are in the nature of care and attention bestowed by a son upon an old or infirm father, no such presumption arises by operation of law. In order, therefore, to sustain a recovery by the son for such services, it must affirmatively appear, either that they were rendered under an express contract that the son was to be paid for them, or the surrounding circumstances must plainly indicate that it was the intention of both parties that compensation should be made, and negative the idea that the services were performed merely because of that natural sense of duty, love and affection arising out of this relation." *Hudson* v. *Hudson,* 90 *Ga.* 581 (1) (16 S. E. 349). Also see Code, § 3-107. "In the absence of an express contract between the parties for the payment of such services, there may arise an implied contract by which the person to whom the services are rendered shall pay the other for the services, where from all the facts and circumstances it can reasonably be inferred that it is in the contemplation of the parties that the services are to be paid for. In determining that in the contemplation of the parties such services are to be paid for, the degree of relationship between the parties, the nature of the services, including the fact that their performance is very disagreeable and obnoxious to the person performing them, that they are such as to indicate the relation of master and servant, or employer and employee between the parties, and such that the person performing them would not naturally do so without compensation and would not perform them solely for love and affection, and statements made by the person to whom the services are rendered of appreciation of the services and an intention to pay therefor, although not necessarily communicated to the person rendering the services, and the fact that the person to whom the services are rendered is financially able to pay therefor, and other facts and circumstances concerning the performance of the services may be considered as authorizing the inference that it is in the contemplation of the parties that the services are to be paid for [citing]." *Humphries* v. *Miller,* 66 *Ga. App.* 871, 872 (19 S. E. 2d, 321). The foregoing principles are applicable to an action by a daughter-in-law to recover for services rendered

her father-in-law. See *Jackson* v. *Buice,* 132 *Ga.* 51 (63 S. E. 823). Also see *Hudson* v. *Hudson,* 87 *Ga.* 678 (1) (13 S. E. 583, 27 Am. St. R. 270). *Brooks* v. *Sims,* 54 *Ga. App.* 71 (2) (187 S. E. 254); *Meads* v. *Williams,* 55 *Ga. App.* 224 (2) (189 S. E. 718); *McElroy* v. *Lambert,* 56 *Ga. App.* 127, 130 (192 S. E. 258). There is evidence from which a jury could find that services were rendered by the plaintiff to the deceased, and that the plaintiff had not performed them solely from love and affection, but in the expectation of pay, and that the deceased had indicated his desire that the plaintiff be paid, and was able to pay for the services. The evidence must be taken most strongly in favor of the plaintiff in passing on the question of the granting of a nonsuit; and if there is any evidence tending to sustain the plaintiff's action, or where the jury can fairly infer from the evidence a state of facts favorable to the plaintiff, a nonsuit shall not be granted. *James* v. *Newman,* 73 *Ga. App.* 79 (4) (35 S. E. 2d, 581); *Brown* v. *Savannah Electric &c. Co.,* 46 *Ga. App.* 393 (2) 396 (167 S. E. 773); *East & West R. Co., of Alabama* v. *Sims,* 80 *Ga.* 807 (2) (6 S. E. 595); *Getzinger* v. *Lariscy,* 77 *Ga. App.* 768 (49 S. E. 2d, 907). "A nonsuit shall not be granted merely because the court would not allow a verdict for plaintiff to stand; but if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit shall be granted." Code, § 110-310. Under the evidence in this case, it was a question for the jury to determine whether or not the plaintiff was entitled to recover; and the trial judge erred in granting a nonsuit.

*Judgment reversed.  Felton and Parker, JJ., concur.*