## A01A0452. HOBBY v. SMITH.
### (550 SE2d 718)

RUFFIN, Judge.

Madera Smith sued Wensley Hobby, executor of the estate of Smith's aunt, Sanella Grauer. In her complaint, Smith sought to enforce an agreement she had with Grauer in which Grauer would leave half of her estate to Smith in exchange for services. In the alternative, Smith sought payment of $47,000, which she alleged was the reasonable value of the services rendered to Grauer. Although the jury rejected Smith's claim for half of the estate, it found she was entitled to the $47,000. Hobby appeals, asserting multiple enumerations of error. For reasons that follow, we reverse.

1. In his first enumeration of error, Hobby asserts that the trial court erred in denying his motion for judgment notwithstanding the verdict (judgment n.o.v.). A trial court can grant a judgment n.o.v. only if there is but one reasonable conclusion as to the proper judgment.[1] "[I]f there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion."[2] Here, Hobby asserts that the evidence does not support a finding that Smith was to be compensated for the services she rendered.

As the jury concluded that no contract existed, Smith's recovery was based upon an implied promise to pay. "Ordinarily, when one

---

[1] See *Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644, 646 (522 SE2d 467) (1999).
[2] Id.

renders service . . . which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. However, this presumption does not usually arise in cases between very near relatives."[3] In order for a close relative to recover, "the surrounding circumstances must plainly indicate that it was the intention of both parties that compensation should be made, and negative the idea that the services were performed merely because of that natural sense of duty, love and affection arising out of [the] relation."[4] Moreover, "[t]here can be no recovery for services rendered voluntarily and with no expectation *at the time of the rendition* that they will be compensated. Under such circumstances no obligation is incurred. A subsequent change of intention by the parties performing the services does *not* alter the rule."[5]

Thus, the issue before the jury was whether the evidence "plainly indicated" that, at the time Smith rendered the services, both Smith and Grauer intended for Smith to be compensated. On appeal, however, we apply the "any evidence" standard, and we view the evidence in the light most favorable to Smith, who prevailed before the jury.[6] Accordingly, the issue before this Court is whether *any evidence* supports a finding that both Smith and Grauer intended for Smith to be compensated for the services rendered.

So viewed, the evidence at trial showed that, in 1977, Grauer executed a will in which she left her estate to her husband. If her husband predeceased her, however, she left all of her estate and property,

> in equal parts, to [her] nieces, MARY ELLEN SMITH ROGERS and MADERA ANN SMITH SMITH, my grand-niece, JOAN ELLEN SMITH ANSLEY, and my grand-nephew, WILLIAM ASHMORE ROGERS, share and share alike, each to receive one-fourth (¼) thereof in fee simple, the division to be per capita and not per stirpes.

After this will was created, Grauer's husband became ill. According to Smith, during Mr. Grauer's illness, she stayed with her aunt at the hospital. When Mr. Grauer died in 1978, Smith assisted in making funeral arrangements. Smith testified that, following Mr. Grauer's death, she helped her aunt, but that, "after a while [Grauer] got along all right and didn't need as much help."

---

[3] OCGA § 9-2-7.

[4] (Punctuation omitted.) *Fortner v. McCorkle*, 78 Ga. App. 76, 80 (2) (50 SE2d 250) (1948).

[5] (Punctuation omitted; emphasis in original.) *Smith Dev. v. Flood*, 198 Ga. App. 817, 820-821 (3) (b) (403 SE2d 249) (1991).

[6] See *Nails v. Rebhan*, 246 Ga. App. 19, 20 (1) (538 SE2d 843) (2000).

In July 1980, Grauer executed a power of attorney, which gave both Smith and Mary Ellen Rogers the authority to take care of Grauer's financial matters. Initially, Smith did not have to make use of the power of attorney because Grauer was largely able to manage her own affairs.

On March 15, 1983, Grauer executed a new will in which she left her estate and property to Smith and Rogers, "share and share alike, each to receive one-half ($\frac{1}{2}$) thereof in fee simple." Smith testified that Grauer initially said nothing about changing her will. Several days after drafting the new will, however, Grauer showed it to Smith.

In December 1983, Grauer's health began to decline, which required Smith to take a more active role in managing Grauer's affairs. According to Smith, she drove her aunt to numerous medical and dental appointments. Smith also took Grauer to the grocery store, and she helped Grauer complete Medicare forms and pay bills.

In October 1993, Grauer decided to move into Sutton Place, an assisted living facility. Sometime thereafter, Grauer had a change of heart regarding her nieces. In July 1994, Grauer retained a law firm to handle her financial matters, and she revoked the power of attorney she had given them. Grauer's lawyer wrote Smith and Rogers, notifying them of the revocation. On September 9, 1994, Grauer executed a new will in which she left all of her property to her brother.

Smith testified that she did not know what prompted Grauer to revoke the power of attorney.[7] But, after receiving the letter from Grauer's attorney notifying her of the revocation, Smith never helped her aunt again. In 1997, Grauer died, and Hobby was appointed as executor. According to Smith, she first learned of Grauer's 1994 will from the executor.

Evidently displeased at having been cut out of her aunt's will, Smith sued the estate. In her complaint, Smith averred that in 1978, Grauer told her "that if [she] would help out [Grauer, Grauer] would leave one-fourth ($\frac{1}{4}$) of [her] estate to [Smith]." Smith also stated in the complaint that, in 1983, Grauer told her that "if [she] would continue to render the services to [Grauer, Grauer] would change her Will and leave one-half ($\frac{1}{2}$) of her estate to [Smith]."

However, Smith's trial testimony did not corroborate the allegations in her complaint. At trial, Smith testified that, when Grauer executed the 1977 and 1983 wills, there was no agreement that she would be named a beneficiary under the will in exchange for services

---

[7] The estate presented evidence that, after Grauer moved into the assisted living facility, she became upset because her nieces stopped visiting as often. The estate also presented evidence that the nieces took money from the estate while denying Grauer money for expenditures. Smith, however, denied these allegations, and, on appeal, we construe the evidence in Smith's favor. See *Ogletree*, supra.

rendered. Rather, Smith testified that Grauer did not discuss her plans prior to executing the wills and told Smith that she was a beneficiary only after the fact. Nevertheless, Smith believed that she was to be compensated for the services she rendered by inheriting under the will. According to Smith, "[w]hen I would take [Grauer] somewhere and do something for her[, Grauer] would say look, if there's anything left, I want you to have it." Smith testified that she "would have probably [helped Grauer] anyway. But since [Grauer] had an estate [Grauer] should have give [sic] me something." The jury apparently agreed, and it awarded Smith $47,000.

Even when construed in favor of Smith, the evidence was insufficient to demonstrate that Grauer intended to pay Smith for the services rendered. According to Smith's own testimony, Grauer executed both the 1977 and 1983 wills without discussing her intentions with her niece. Thus, there is no competent evidence that, at the time the wills were drafted, Grauer's intent was to leave money to her niece in exchange for the services rendered.[8] And there is no evidence that Grauer ever intended to do anything other than name Smith as a beneficiary under the will.[9] The mere fact that Grauer intended to bequeath property to Smith does not support an inference that such bequest was intended as payment for services rendered.[10] Indeed, Grauer also intended to leave part of her estate to Rogers, who apparently did not regularly render services for her aunt.

Given the dearth of evidence that Grauer intended to pay her niece for services rendered, the presumption remains that Smith helped her aunt out of a natural sense of duty, love and affection.[11] It follows that the trial court erred in failing to grant Hobby's motion for judgment n.o.v.[12]

2. In view of our holding in Division 1, we need not address Hobby's remaining enumerations of error.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

---

[8] Indeed, when the 1977 will was drafted, Smith was merely a contingent beneficiary.

[9] Smith never actually testified that Grauer said that she would name Smith a beneficiary in exchange for assistance. Smith merely testified that, when her aunt "was really depressed and needed somebody" she would reiterate that Smith was a beneficiary under the will.

[10] In her brief, Smith asserts that "[t]he obligation occurred when Grauer asked [Smith] to help her on July 4, 1978." Smith's testimony does not support this statement. Smith testified that her aunt told her "she had one fourth of her estate made to me in 1978. And she needed me to help her." Smith *never* said that Grauer specified that any bequest was in exchange for the help. Even assuming Smith's testimony supported her contention, we note that any testimony regarding conversations that took place prior to July 1, 1979, would be inadmissible under the former Code Ann. § 38-1603, Georgia's Dead Man's Statute. See *Foster v. Ramsey*, 245 Ga. App. 118, 120 (3) (536 SE2d 550) (2000).

[11] See *Fortner*, supra.

[12] See *Poole v. Baggett*, 110 Ga. 822 (36 SE 86) (1900).

DECIDED JUNE 21, 2001 —
RECONSIDERATION DENIED JULY 19, 2001 — 

*Glen A. Cheney*, for appellant.
*Dubberly & McGovern, Bruce D. Dubberly, Jr.*, for appellee.