A03A1380, A03A1381. FEDERAL INSURANCE COMPANY et al. v. WESTSIDE SUPPLY COMPANY, INC. et al.; and vice versa.
(590 SE2d 224)

SMITH, Chief Judge.

The complaint in this case arose out of a series of employee thefts from plaintiff Lincoln Electric Company, which does business as Harris Calorific and is a manufacturer and seller of welding products. Items stolen from Lincoln Electric were sold to Westside Supply Company, Inc., which also sells welding equipment. William Swann is the sole stockholder of Westside Supply. Lincoln Electric Company and its insurer, Federal Insurance Company (collectively "Lincoln"), brought this action against Westside and Swann (collectively "Westside" unless otherwise indicated), seeking damages against one or both defendants under the following theories of recovery: conversion; tortious conversion; civil Racketeer Influenced and Corrupt Organizations Act ("RICO"); conspiracy to breach duties of honesty, loyalty, and good faith; conspiracy to commit fraud; unjust enrichment; conspiracy to commit conversion; breach of contract; breach of implied contract; and negligence.

The trial court granted summary judgment to Westside and Swann on the fraud and negligence claims and concluded that Westside and Swann were entitled to partial summary judgment on claims based on sales that occurred outside the applicable statutes of limitation. The court denied summary judgment to Westside with respect to the remaining claims. In Case No. A03A1380, Lincoln appeals from the denial of its motion for partial summary judgment on the conversion claims and from the grant of partial summary judgment to Westside and Swann. In Case No. A03A1381, Westside appeals from the denial of its motion for summary judgment on the remaining claims. As more fully discussed below, we conclude that the trial court correctly denied summary judgment to both parties with respect to Lincoln's conversion claims. We also conclude, however, that although the trial court correctly granted summary judgment to Westside on Lincoln's negligence claim, the trial court incorrectly granted summary judgment to Westside on issues related to Lincoln's fraud claim, including issues concerning the applicable statutes of limitation. In Case No. A03A1380, we therefore affirm in part and reverse in part. Because we conclude that the trial court correctly denied summary judgment to Westside with respect to the remaining claims, we affirm the judgment in Case No. A03A1381.

It is undisputed that Westside and Lincoln were involved in a long-time business relationship in which Westside regularly purchased new supplies from Lincoln. Dennis Oberlies was employed by Lincoln for several years as a distribution manager. Westside and Lincoln engaged directly in two legitimate business transactions, in which Westside purchased excess inventory from Lincoln. Oberlies assisted with these transactions.

This lawsuit involves activities allegedly engaged in by Oberlies and Swann after the above-described transactions. Oberlies testified that he told Swann that he "was buying scrap equipment from [Lincoln] and reselling it." Over the next eight to ten years, Oberlies sold a large amount of these purportedly used or defective items to Westside. But Oberlies had not purchased these items from Lincoln; he testified that he stole them from the repair and return department. He would contact Swann, and if they reached an agreement as to price, Oberlies would ship the items to Westside. In return, Westside would send a check for the agreed-upon amount to Oberlies at his home. Westside paid Oberlies more than $600,000 in exchange for the stolen items. Oberlies caused Lincoln to pay the shipping costs for the stolen goods. When asked if he ever paid Lincoln "for any of the goods shipped to Westside," Oberlies replied, "No. If I did, I wouldn't be in here."[1]

According to Swann, Oberlies told him that Lincoln had set up a program in which it had assigned certain employees "to sell equipment for [Lincoln] that [Lincoln] categorized as junk; returns, repairs, whatnot." Swann testified he believed Oberlies "would pay [Lincoln] for the material and negotiate a price with me based on the price that he paid" to Lincoln. When asked why Lincoln paid the shipping charges for the items purchased by Westside from Oberlies, Swann testified: "It was my understanding that I was doing [Lincoln] a favor to get rid of this stuff; they were responsible for freight to me." Although Swann claimed he believed the items purchased from Oberlies were used or obsolete, the record shows that a number of those items may have been new.

### Case No. A03A1380

1. Lincoln argues that the trial court erred in granting summary judgment to Westside on the fraud claim. We agree.

Lincoln presented evidence from which a jury might conclude that Swann knew the items purchased from Oberlies were stolen or that the transactions were otherwise illegitimate. First, as found by

---

[1] At the time of his deposition, Oberlies was in federal prison after pleading guilty to criminal charges arising out of the thefts.

the trial court in the portion of its order denying summary judgment on the RICO claim, Westside "bought hundreds of shipments of alleged stolen goods over a ten-year period while maintaining two different relationships with plaintiffs. Swann maintained the relationship with Oberlies concerning the alleged used products while Westside continued to honor the distribution contract concerning new products." Evidence was presented that over that ten-year period, Swann never mentioned his relationship or business dealings with Oberlies to the Lincoln executives with whom he was conducting regular business transactions.

Second, payment methods and delivery practices raise questions concerning the nature of the transactions. When Westside purchased materials directly from Lincoln, Westside paid Lincoln directly. But when Westside purchased goods from Oberlies, Westside sent checks to Oberlies at his home. A jury might infer that because Swann testified he believed Oberlies had his own business, he sent checks to Oberlies at his home. But the stolen items were shipped from Oberlies's place of business, and a jury might as easily infer that if the transactions had been legitimate, payments would have been sent to Oberlies at his business address.

Third, when Westside purchased materials directly from Lincoln, Westside shared in the shipping costs. But when Westside received goods from Oberlies, Lincoln paid all shipping costs. If Oberlies and Westside had been involved in legitimate transactions, it would be difficult to conclude that Lincoln, a third party to the relationship between Oberlies and Swann, would have agreed to pay shipping costs on goods sold by Oberlies.

Fourth, no documentation accompanied the shipments of the stolen goods. When asked how he was able to ship the items "without there being a corresponding invoice," Oberlies explained that he "would pack the stuff up, weigh it, call the truck in, write the bill of lading up, and send it off. And I would tear up the bill of lading." He testified that Westside often called him and requested invoices and that he would create them after he had shipped the stolen items. Swann testified that he knew Oberlies "made up" the invoices. We also note that during the federal criminal investigation of Oberlies's activities, the Federal Bureau of Investigation ("FBI") subpoenaed Westside's business records. After these records were returned to Westside, but sometime during the year before this action was filed, Westside destroyed all documents that predated the year 1994. These documents included invoices, receivables, and bank statements.

Fraud cannot be presumed. *Marshall v. York*, 165 Ga. App. 795, 798 (3) (302 SE2d 711) (1983). But "slight circumstances may be sufficient to carry conviction of its existence." (Citations omitted.) Id. A

plaintiff is not necessarily required to show that the defendant made an actual verbal false representation. "Fraud is not committed by wilful misrepresentation alone but in this regard is subtle and can be accomplished in an infinite number of ways including signs and tricks and even, in some instances, by silence." (Citation and punctuation omitted.) *Infinity Ins. Co. v. Martin*, 240 Ga. App. 609, 611 (1) (524 SE2d 294) (1999). As stated in *Quill v. Newberry*, 238 Ga. App. 184 (518 SE2d 189) (1999), proof of fraud is rarely "susceptible of direct proof." Id. at 189 (1) (b). Consequently, "recourse to circumstantial evidence *usually is required*. Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud. Except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination." (Citation omitted.) Id.

Evidence was presented from which a jury might conclude that Swann's failure, over a period of approximately ten years, to mention his business dealings with Oberlies to Lincoln executives may have constituted a false representation. In addition, the shipping, billing, and invoice practices constitute evidence from which a jury might conclude that Swann engaged in covert dealings with Oberlies. Also, as argued by Lincoln, Swann's destruction of business records might "be considered by a jury to be evidence of fraud." See *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 525 (1) (484 SE2d 249) (1997); *Fann v. Mills*, 248 Ga. App. 460, 464 (2) (546 SE2d 853) (2001). Given the subtle nature of fraud and the well-established principle that slight circumstances of artifice or trickery can be sufficient to allow a jury to consider a fraud claim, we conclude that this is not a "plain and indisputable" case, *Quill*, supra, 238 Ga. App. at 189, that can be resolved on motion for summary judgment. The trial court erred in granting summary judgment to Westside on this claim.

2. We next address Lincoln's contention that factual issues exist as to whether the applicable statutes of limitation were tolled by the alleged fraud of Oberlies and Swann.

OCGA § 9-3-96 provides that if a defendant is "guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." To toll the statute of limitation under this section, a plaintiff must prove that the defendant engaged in actual fraud involving moral turpitude which concealed the existence of a claim, and the plaintiff must show that he or she exercised "reasonable diligence" in discovering the cause of action. *Jim Walter Corp. v. Ward*, 245 Ga. 355, 357 (265 SE2d 7) (1980). Whether a plaintiff exercised reasonable care in discovering the fraud is generally a jury question. Id. (jury to apply ordinary care standard to circumstances of each case). Concealment of the cause of action "must

be by positive affirmative act and not by mere silence. [Cit.]" *Comerford v. Hurley*, 154 Ga. App. 387, 388 (268 SE2d 358) (1980), aff'd, 246 Ga. 501 (271 SE2d 782) (1980).

> To constitute concealment of a cause of action so as to pre-
> . vent the running of limitations, some trick or artifice must
> be employed to prevent inquiry or elude investigation, or to
> mislead and hinder the party who has the cause of action
> from obtaining information, and the acts relied on must be
> of an affirmative character and fraudulent.

(Citation and punctuation omitted.) *Clinton v. State Farm &c. Ins. Co.*, 110 Ga. App. 417, 422 (1) (138 SE2d 687) (1964).

Fact questions exist as to whether Oberlies and Swann engaged in fraudulent activity involving moral turpitude and whether they actively concealed their activities from Lincoln. Given the billing, shipping, and payment practices in which Oberlies and Swann engaged, we conclude that some evidence exists from which a jury could conclude that Swann was not merely silent as to the existence of a fraud claim but that, instead, Oberlies and Swann actively employed trickery or artifice that prevented inquiry or investigation by Lincoln. *Clinton*, supra, 110 Ga. App. at 422 (1).

The trial court noted that Lincoln employees were aware of Oberlies's activities and stated that even though these employees' knowledge could not be imputed to Lincoln, reasonable diligence would have revealed Oberlies's illegal activity and therefore that the statutes of limitation were not tolled by fraud. The court concluded that Lincoln never "made any inquiries into Oberlies' activities" and never "attempted to audit Oberlies or attempt to find out where all of the shipments were going. Plaintiffs were in the best position to exercise reasonable diligence in regards to Oberlies' activities, and if they had, it may not have taken over ten years to discover the defalcation."

Some evidence was presented that employees in Lincoln's shipping department had suspected since 1994 that Oberlies was stealing from the company. The trial court correctly found that those employees' knowledge could not be imputed to Lincoln. See generally *Keenan v. Hill*, 190 Ga. App. 108, 111 (378 SE2d 344) (1989); *Stein Steel &c. Co. v. Franco*, 148 Ga. App. 186, 188 (1) (251 SE2d 74) (1978).

We do not agree with the trial court, however, that Lincoln's failure to discover the fraud amounted to a lack of diligence, *as a matter of law*. Oberlies had been an employee of either Harris Calorific or Lincoln for many years, and Westside has not pointed to any evidence showing that Lincoln had a reason to suspect Oberlies of wrongdoing. Westside argues that if Lincoln had "even performed

rudimentary monitoring functions," Lincoln "would have easily discovered" the thefts. But whether Lincoln properly monitored Oberlies's behavior, whether it placed an unreasonable amount of trust in Oberlies, and whether Oberlies and Swann engaged in trickery and artifice are inherently questions of fact for a jury. Lincoln's internal practices with regard to inventory control and the monitoring of its own employees do not demand a judgment as a matter of law, but they certainly can be considered by the jury in deciding the issue of Lincoln's diligence in discovering the fraud. "[W]here there are facts involving fraud and excuses for delay in discovering the same, the question is one of mixed law and fact, and is one for determination by the jury under proper instructions from the court." (Citations and punctuation omitted.) *Fidelity & Deposit Co. v. Sun Life Ins. Co.*, 174 Ga. App. 258, 262 (3) (329 SE2d 517) (1985). Swann's alleged fraud "was in issue and there was a delay in discovering" that fraud. Id. Partial summary judgment on the statute of limitation defense was therefore improperly granted.

3. Lincoln contends that it was entitled to partial summary judgment on its conversion claim. In general, "[a]ny distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion." (Footnote omitted.) *Jamal v. Hussein*, 237 Ga. App. 779, 784 (3) (515 SE2d 407) (1999). An exception to this principle is set out at OCGA § 11-2-403, however, which provides that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." Id. The trial court concluded that issues of fact existed as to whether Oberlies was a merchant and whether Lincoln entrusted its goods to Oberlies. Lincoln argues that this exception is inapplicable as a matter of law and that the trial court should have granted its motion for partial summary judgment on its conversion claim.

Even assuming, without deciding, that the UCC exception does not apply and that Lincoln alleged a simple conversion claim not involving a "merchant" as defined by the UCC, we conclude that the equitable doctrine codified at OCGA § 23-1-14 precludes summary judgment to Lincoln. That Code section provides that "[w]hen one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." Id. Here, as discussed extensively above, factual issues exist as to whether Swann was innocent and whether Lincoln's inattentiveness may have placed Oberlies in a position to steal from the company with impunity. Partial summary judgment to Lincoln on the conversion claim was not authorized.

4. Lincoln argues that the trial court erroneously granted summary judgment to Westside and Swann on its negligence claim. To

prevail on a negligence claim, a party must show, among other things, the existence of a duty and breach of that duty. *Hodges v. Putzel Elec. Contractors*, 260 Ga. App. 590, 594 (2) (580 SE2d 243) (2003). Of course, as argued by Lincoln, Westside and Swann had the duty to avoid committing fraud and theft by taking. But the alleged breach of these duties is encompassed in Lincoln's fraud and RICO claims. Here, as found by the trial court, Lincoln has "not presented any evidence that a legal duty . . . existed" outside the terms of any contract between Westside and Lincoln, the breach of which constitutes negligence. A cognizable claim of negligence simply does not exist under the facts of this case.

## Case No. A03A1381

5. Westside argues that it was entitled to summary judgment on the conversion claim under the UCC exception found at OCGA § 11-2-403 and under the equitable principle set out in OCGA § 23-1-14, both of which are discussed in Division 3. For the moment, assuming that the UCC exception might be applicable, that exception "is aimed at the protection of the purchaser, where [the purchaser] acts in good faith and the owner takes the risk by placing or leaving his chattel with a merchant of his own choosing." (Citations and punctuation omitted.) *Simson v. Moon*, 137 Ga. App. 82, 85-86 (222 SE2d 873) (1975). But again, as discussed exhaustively above, whether Swann was an "innocent" or "good faith" purchaser and whether Lincoln placed Oberlies in a position to commit the thefts are jury questions. Neither Westside nor Lincoln was entitled to summary judgment on this claim.

6. Westside argues that the trial court erred in denying its motion for summary judgment on Lincoln's civil RICO claim and its claim of conspiracy to breach duties of honesty, loyalty, and good faith. Westside contends the record is undisputed that it was unaware that the goods sold by Oberlies were stolen. Oberlies gave a sworn statement during his criminal investigation in which he stated that Swann had no knowledge that the items were stolen.

Westside correctly argues that direct evidence was presented that Swann did not know the items he purchased from Oberlies were stolen. Also, we agree with Westside that the evidence of his guilty knowledge was circumstantial. And in general, as argued by Westside, "in passing upon a summary judgment motion, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists. [Cits.]" *Renden, Inc. v. Liberty Real Estate*, 213 Ga. App. 333, 335 (2) (a) (444 SE2d 814) (1994).

This broad rule cannot be so readily applied in a case such as

this, however, in which central issues are whether Swann intended to engage in a pattern of transactions involving theft by receiving stolen property and whether he intended to conspire with Oberlies in a breach of Oberlies's duty of honesty, loyalty, and good faith. Whether Swann fraudulently purchased the stolen items is at the core of this litigation. And in cases involving fraud, as discussed above, proof of scienter usually can only be accomplished by circumstantial evidence.

> Generally, if a defendant did *not* deny scienter as to what otherwise would be a fraudulent act, neither litigation nor subsequent appeal would even be necessary. Thus, if scienter in a fraud case is normally proved through circumstantial evidence raising inferences to contradict a defendant's denial of scienter, then such inferences cannot be negated simply through the defendant's denial, itself. This is why scienter is "peculiarly" a jury issue; it deals with the choice of what to believe regarding a subjective state of mind seldom capable of direct proof. Clearly, making a *choice* as to what to believe has no place in summary judgment. [Cit.]

*Quill,* supra, 238 Ga. App. at 189 (1) (c). See also *Lane Co. v. Taylor,* 174 Ga. App. 356, 361 (4) (330 SE2d 112) (1985) (physical precedent only). Circumstantial evidence was presented from which a jury might conclude that Swann knew that the items purchased from Oberlies over a period of several years were stolen. The trial court therefore did not err in denying Westside's motion for summary judgment on the claims alleging RICO violations and conspiracy to breach duties of honesty, loyalty, and good faith.

7. Westside argues that it was entitled to summary judgment on Lincoln's claim for breach of contract.[2] Issues of fact exist concerning the scope of the distribution agreement that apparently forms the basis for Lincoln's breach of contract claim, particularly, whether the agreement covered both new and used goods and whether the parties mutually departed from the terms of the agreement. In addition, factual issues exist as to whether the items sold by Oberlies were new or used. The trial court did not err in denying Westside's motion for summary judgment on this claim.

8. Westside argues that it was entitled to summary judgment on Lincoln's claims of breach of implied contract and unjust enrichment.

---

[2] We note that to the extent Westside has raised arguments on appeal that it did not make in the trial court, those arguments will not be considered. *Pfeiffer v. Ga. Dept. of Transp.,* 275 Ga. 827, 829 (573 SE2d 389) (2002).

We agree with the trial court's conclusion that a decision concerning these claims would be premature. Recovery under these theories presupposes the absence of a contractual agreement. See generally *Ga. Tile Distrib. v. Zumpano Enterprises*, 205 Ga. App. 487, 488 (1) (422 SE2d 906) (1992) (unjust enrichment theory applies when no legal contract exists); *Fortner v. McCorkle*, 78 Ga. App. 76, 80 (2) (50 SE2d 250) (1948) (in absence of express contract, implied contract may arise in certain circumstances). If the jury concludes that Westside is liable on Lincoln's breach of contract theory, the issue of Westside's liability under the alternative theories of unjust enrichment and implied contract would become moot. Conversely, if the jury concludes that Westside did not breach any express contract, questions of fact would exist as to whether Westside is liable under these theories.

9. Swann argues that he is not liable individually with respect to a number of the theories advanced by Lincoln. To the extent Swann is arguing that he is protected by a "corporate veil," this protection cannot be afforded to "a party [who] has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or evade contractual or tort responsibility." (Citations and punctuation omitted.) *Cheney v. Moore*, 193 Ga. App. 312, 313 (1) (387 SE2d 575) (1989). Because factual issues exist as to whether Swann personally engaged in fraud against Lincoln in his dealings with Oberlies, we cannot conclude as a matter of law that Swann was shielded from individual liability.

10. Westside argues that it was entitled to summary judgment because Lincoln can only speculate as to its damages. Westside correctly contends that if "[a] plaintiff's claim for damage[ ] is remote or speculative, summary judgment for the defendant is appropriate. [Cit.]" *The Hip Pocket v. Levi Strauss & Co.*, 144 Ga. App. 792, 794 (2) (242 SE2d 305) (1978). But we cannot agree with Westside that Lincoln's evidence of damages is too speculative or remote.

As stated by the trial court, under OCGA § 44-12-152, "[f]or personalty unlawfully detained, the plaintiff may recover a sum in the amount of the highest value which he is able to prove existed between the time of the conversion and the trial." Among other things, Lincoln presented evidence concerning the face value of the checks written to Oberlies by Westside. In addition, Lincoln presented the testimony of its division controller, who gave an opinion as to the value of the converted goods and painstakingly described the method he used to reach this value. Under the circumstances presented in this case, we cannot conclude that Westside was entitled to summary judgment on the ground that damages are too speculative.

*Judgment affirmed in part and reversed in part in Case No. A03A1380. Judgment affirmed in Case No. A03A1381. Ruffin, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 19, 2003.

*Mozley, Finlayson & Loggins, Charles D. Hailey*, for appellants.
*Friedman, Dever & Merlin, H. Michael Dever, Douglas M. Robinson*, for appellees.