A99A0732. JAMAL et al. v. HUSSEIN et al.
(515 SE2d 407)

BEASLEY, Presiding Judge.

For the second time, Karim Jamal and Impulse International, Inc. appeal a grant of partial summary judgment on some of their claims arising out of pursuit of a convenience store business incorporated as Ark International, Inc. *Jamal v. Pirani*, 227 Ga. App. 713 (490 SE2d 140) (1997) (*"Jamal I"*), which set out the basic facts, affirmed partial summary judgment of Jamal's claims against Arif Hussein and Raees Pirani for breach of partnership agreement and usurpation of corporate opportunities. Before us for review is a later order granting another motion for partial summary judgment as to the remaining claims against the individual defendants and Ark, except for Jamal's claim against Ark for repayment of a loan: (1) Jamal's claim against all defendants for repayment of his initial loans; (2) Jamal's claim for a share of Ark's profit; (3) Jamal's claim of fraud/conversion against all defendants for diverting to their own use his loan repayments and profit; (4) Jamal's and Impulse's claim for attorney fees; and (5) Jamal's and Impulse's claim for punitive damages.

Construing the facts important to this appeal in favor of appellants Jamal and Impulse shows that Jamal approached Pirani about purchasing J's One Stop, a convenience store and gas station, and Pirani proposed that Hussein be brought in to manage the business. Pirani negotiated a price with the owner while Jamal reserved the name Ark International, Inc. with the Secretary of State. Jamal then

borrowed approximately $30,000 against his personal credit cards and deposited the money in an account set up in the name Ark International, Inc. Two or three days later the deal closed. Jamal made additional loans to Ark to fund the purchase of a second store on about November 22. Ark was incorporated December 29, 1993, as provided by OCGA § 14-2-203 (a), when its articles of incorporation were filed.

1. Relying on OCGA § 14-2-204 and *Echols v. Vienna Sausage Mfg. Co.*,[1] Jamal contends that although he loaned the money to Ark and there were no personal guarantees, Hussein and Pirani are liable for Ark's pre-incorporation debts. OCGA § 14-2-204 states: "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting." The trial court ruled that OCGA § 14-2-204 does not apply where the claimant also knows the corporation does not exist at the time of the transaction, and that without personal guarantees and because the corporation replaced the partnership the individuals cannot be liable for the loan as a matter of law. OCGA § 14-2-204 indeed does not apply, but the remainder of the court's decision on this issue is problematic.

At the time of the loans there was no corporation and all three men knew it. Prior to incorporation the entity " 'could do no corporate act, could receive no corporate property, could incur no corporate liability, and against it no corporate judgment could be legally rendered.' [Cit.]"[2] Rather, whether they understood it legally or not, the three men were in partnership pending incorporation of their business.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit."[3] Hussein testified the agreement between the parties was that the three would be equal partners and the partnership would eventually take the form of a corporation. Pirani testified there was a verbal agreement that the three would "go into business together" and would form a corporation where each would own one-third of the stock "for profit, for loss, or for nothing." Jamal testified that in their initial discussion about the business "it was understood between all three of us that all three of us would be one-third partners."

Jamal's testimony later in his deposition, that at the time of the initial conversation he intended the company to be a corporation and not a partnership, does not control. Partnership is a mixed question

---

[1] 162 Ga. App. 158 (290 SE2d 484) (1982).

[2] *Michael Bros. Co. v. Davidson & Coleman*, 3 Ga. App. 752, 754 (60 SE 362) (1908).

[3] OCGA § 14-8-6.

of fact and law,[4] and Jamal's answer could be seen as a reference to the partners' agreement to incorporate eventually.

One term of the partners' oral partnership agreement provided they would soon form a corporation in which each partner would become an equal shareholder. Eventually, the "oral partnership terminated as a matter of law when Jamal, Hussein, and Pirani incorporated their business and began operating their venture under the corporate form."[5] Against this backdrop it is clear that although Jamal stated he loaned the money to "Ark," he could not have loaned the money to a corporation not yet formed. The loan was to the partnership, which makes OCGA § 14-2-204 inapplicable.

The two fellow founders of Ark were not "purporting to act as or on behalf of" the yet-to-be-formed corporation relative to Jamal. Jamal knew Ark was not yet incorporated. He was not misled by Pirani and Hussein into believing they represented a corporation that did not exist; they all had equal knowledge of the state of affairs. In fact, it was Jamal who took the lead in reserving the name Ark International, Inc. and in establishing a bank account in that name. There is no indication Jamal believed Ark had been incorporated when he made the loans or that either Hussein or Pirani was responsible for incorporating Ark.

Distinguishable are cases addressing nonexistent corporations and application of either OCGA § 14-2-204 or the former law, i.e., former § 14-2-23 and the common law "promoter's liability."[6] In them the aggrieved party was a third party ignorant of the fact there was no corporation, not a partner with equal knowledge of that fact.[7]

The corporation Ark International, Inc. took over the business of running the convenience stores. The terms of the transfer are not clear from the record. For instance, the three individuals signed

---

[4] *Pope v. Triangle Chem. Co.*, 157 Ga. App. 386, 388 (3) (a) (277 SE2d 758) (1981).

[5] *Jamal v. Pirani*, supra, 227 Ga. App. at 714 (1).

[6] See *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 834 (1) (446 SE2d 186) (1994) (former § 14-2-23 and the common law "promoter's liability" were in essence the same theory of liability). See also *Wells v. Fay & Egan Co.*, 143 Ga. 732, hn. 1 (85 SE 873) (1915) (promoter's liability means that a person acting on behalf of a corporation not yet in existence will be personally liable on his contracts, "unless the other party agreed to look to some other person or fund for payment").

[7] See, e.g., *Zuberi v. Gimbert*, 230 Ga. App. 471, 473 (1) (496 SE2d 741) (1998) (Gimberts believed they were dealing with a corporation); *Weir v. Kirby Constr. Co.*, supra (plaintiff contracted with corporation); *Video Power v. First Capital Income Properties*, 188 Ga. App. 691, 692 (373 SE2d 855) (1988) (defendant signed lease in his representative capacity as president of nonexistent corporation); *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 795 (3) (359 SE2d 920) (1987) (party enforcing contract thought it was dealing solely with corporation); *Don Swann Sales Corp. v. Echols*, 160 Ga. App. 539, 541 (287 SE2d 577) (1981) (parties thought the corporation had been registered); *Wiggins v. Darrah*, 135 Ga. App. 509 (218 SE2d 106) (1975) (complainant entered into contract with what appeared to be a corporation).

leases for the land occupied by the stores, and that has not changed. The leases apparently were never transferred to the corporation after it was formed. Such an arrangement is up to the parties; a corporation succeeding a partnership is not always liable for the debts of the partnership.[8] The decision in *Jamal I* is not inconsistent. Division 1 of *Jamal I* addressed whether the three continued to owe each other partnership duties after incorporation.[9] Here we address whether a certain liability remained with the partnership.

The issue now is whether the partnership agreement provided that the corporation would assume liability for repayment of the loans, or similarly, whether the partnership transferred that liability to the corporation when the corporation was formed. If not, then the partnership is liable for repayment of the loan.

In *Jones v. J. S. H. Co.*[10] a dispute arose among three people who had been partners in an enterprise which was subsequently incorporated. Long after incorporation, two of the three original shareholders and the corporation sued the third original shareholder, who operated the business, and his wife for an accounting and money judgment arising out of various transactions for which no accounting had been made. The defendants sought to establish certain credits which arose out of the earlier partnership, such as a claim for commissions on pre-incorporation sales.[11] The issue was whether the corporation assumed all debts of the prior partnership. The Supreme Court reversed the auditor's denial of these credits, reasoning: "in the absence of any understanding to the contrary, it would be presumed that such a new and solvent organization [(i.e., the corporation)] would be answerable for such claims as the previous partnership might have owed to its own members."[12]

Here there is evidence of an understanding to the contrary. First, the record contains scant details of any agreement regarding transfer of assets and liabilities to the corporation. Pirani was asked what the arrangement was regarding the loan, to which he replied, "we were supposed to pay [Jamal] back." But the fact that the leases were never transferred is some evidence that not all assets and liabilities moved over the bridge. Given the treatment of the leases and the conflicting testimony of whether the partners were to be liable for repayment of Jamal's loans, an issue of fact remains for trial. The jury must decide whether the parties' agreement included that the liabil-

---

[8] See *Dickson-Carroll Co. v. U. S. Fidelity &c. Co.*, 58 Ga. App. 540 (2) (199 SE 322) (1938) ("[w]here a partnership is succeeded by a corporation, the corporation is not liable for the debts of the partnership not assumed in a manner recognized by law").

[9] *Jamal v. Pirani*, supra, 227 Ga. App. at 714 (1).

[10] 199 Ga. 755 (35 SE2d 288) (1945).

[11] Id. at 761, 770 (2).

[12] Id. at 770 (2).

ity associated with the loan was to be transferred to the corporation or remain with the partnership.

*Carnes v. McNeal*[13] is not on point because the plaintiff made the contribution after incorporation. He sought return of money contributed to a business commenced as a partnership and later incorporated. The court held the partnership terminated upon incorporation and the plaintiff had no claim under the partnership agreement for return of the money.

2. Jamal claims the individuals should also be liable for repayment of the loans because after incorporation Hussein and Pirani so commingled Ark's assets with their own or another corporation's that Jamal should be allowed to pierce Ark's corporate veil. Division 1 does not moot this issue because Ark may have assumed liability for the loans.

The trial court ruled that Jamal failed to make specific citation to the record to show facts sufficient to send this issue to the jury. Although Jamal cited no facts on piercing the corporate veil in the subsection of his brief in response to the motion, he cited testimony in his statement of facts and in his response to defendants' statement of material issues not in dispute. That evidence, together with the deposition of Ark's accountant, constitutes a sufficient base to create an issue of fact with regard to the issue.

> Courts permit "piercing the corporate veil" in situations where the parties involved have themselves disregarded the separateness of legal entities by a commingling and confusion of properties, records, control, etc. Under such circumstances, the court may disregard the corporate entity.[14]

The record reveals no shareholders or directors meetings and shows that no stock was issued. Hussein testified that there may have been "transfers" of merchandise between stores owned by Ark and other stores owned by Pirani. Hussein and Pirani received significant cash from the corporation, but there is no record of these payments.[15] Ark's accountant admitted his records do not indicate how much money was distributed by Ark to Hussein or Pirani other than payroll. Nor do the records show cash transactions. The accountant testified that unless a payment was made by check he did not account for cash disbursements. The accountant has not been able to

---

[13] 224 Ga. App. 88 (479 SE2d 474) (1996).

[14] *Casey v. Carrollton Ford Co.*, 152 Ga. App. 105, 106 (262 SE2d 255) (1979).

[15] Jamal claims that Pirani admitted commingling Ark's assets with other businesses. But the cited testimony shows only possible commingling between the two stores owned by Ark, a non-issue in this case.

file corporate tax returns for Ark because Hussein and Pirani have given him insufficient information. The accounting records are silent as to how much money was loaned to Jamal.

This evidence leaves unresolved whether Hussein and Pirani failed to accurately account for cash disbursements from Ark, how much cash the two have taken and what rightfully belongs to Ark. All in all, defendants have not foreclosed a piercing of the corporate veil that would allow recovery of loan payments directly from Hussein and Pirani.[16]

> On the one hand, we are mindful that great caution should be exercised by the court in disregarding the corporate entity. On the other, it is axiomatic that when litigated, the issue of "piercing the corporate veil" is for the jury unless there is no evidence sufficient to justify disregarding the corporate form.[17]

Summary judgment on this issue was error.

3. Jamal asserts the court applied the wrong standard when eliminating his claim that Hussein and Pirani converted his loan repayments or profit distribution to their own use. He also urges error in failing to recognize self-contradictory testimony in Hussein's and Pirani's depositions which create issues of fact on this claim. Summary judgment was not proper.

> Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. It is in law a conversion whether it be for his own or any other's use. [Cit.][18]

---

[16] See *Pope v. Professional Funding Corp.*, 221 Ga. App. 552, 553 (1) (472 SE2d 116) (1996) (president admitted he, another officer and shareholder transferred funds among their businesses without regard to corporate formalities); *Unified Svcs. v. Home Ins. Co.*, 218 Ga. App. 85, 90 (5) (460 SE2d 545) (1995) (defendants transferred assets, without compensation, to different corporation; wrote off debts to benefit themselves; withdrew money from company at will in lieu of salary; and borrowed money from company without paying interest); *McLean v. Continental Wingate Co.*, 212 Ga. App. 356, 359-360 (2) (442 SE2d 276) (1994) (defendant used corporate assets to purchase personal property, including realty, for himself and for family members, which did not benefit the corporation); *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. 672, 673 (1) (327 SE2d 751) (1985) (person who was president, principal shareholder and only employee took loans and salary advances without board approval and engaged in other self-serving transactions).

[17] (Citations and punctuation omitted.) *J-Mart Jewelry Outlets v. Standard Design*, 218 Ga. App. 459, 460 (1) (462 SE2d 406) (1995).

[18] (Punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356

A corporate officer may be held liable for torts he personally committed or specifically directed be done.[19]

The same evidence which leaves open a piercing of the corporate veil, together with the unresolved question of who, if anyone, owes Jamal for his loans, creates an issue of fact as to conversion.

If the partnership is liable for repayment of the loans, or if Ark's corporate veil can be pierced, then the individuals may be liable for the loans or for converting Jamal's loan repayments. If Ark is liable for the loans and the veil is not pierced, then Ark may be liable on a claim of breach of contract. Then again, even if Ark is responsible for repayment of the loans, there may not have been sufficient operating revenue to repay the loans. There is no evidence of the loan repayment terms. Payments may not be due. Other creditors may have had superior positions to Jamal. With regard to profit distributions, there is no indication how profits were to be determined and when profits were to be distributed. If the conclusion is that Ark did not have a present obligation to repay the loans or distribute profit, then any conversion claim belongs to Ark and not to Jamal.

We also reverse the grant of summary judgment on Jamal's claims for punitive damages and attorney fees, which was granted solely for the reason that the above claims had been eliminated.

4. Finally, Impulse contends the trial court improperly ruled that it failed to preserve its claim of breach of contract against Ark. In the section of the pre-trial order in which plaintiffs listed the issues to be decided by the jury there is no mention of Impulse's claim. The trial court did not abuse its discretion in eliminating the claim despite references to such a claim elsewhere in the pre-trial order.

5. This decision is based on the record submitted to us and because we rule in appellants' favor, their motion to supplement the record on appeal is moot.

*Judgment affirmed in part and reversed in part. Blackburn and Barnes, JJ., concur.*

DECIDED MARCH 31, 1999 —
RECONSIDERATION DENIED APRIL 28, 1999 — ▮

---

SE2d 877) (1987).

[19] *Smith v. Hawks,* 182 Ga. App. 379, 385 (355 SE2d 669) (1987).

*McLarty, Robinson & Van Voorhies, John E. Robinson*, for appellants.

*Allen W. Bodiford, Martin C. Jones*, for appellees.