**THIRD DIVISION**
**DOYLE, P. J.**
**MCFADDEN, P. J. AND GOBEIL, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 15, 2024**

# In the Court of Appeals of Georgia

A23A1302. FARMER v. FARMER.

MCFADDEN, Presiding Judge.

At issue are the enforceability of a verbal promise to convey a life estate, an alternate claim of unjust enrichment, and a derivative claim for attorney fees. The trial court entered summary judgment rejecting those claims. We reverse.

In 1995, Rose Mary Farmer told her daughter, appellant Mary Ann Farmer, and her son, Terrell Farmer, that she had decided to give the 17.62-acre tract of land on which the family's home place was located to Terrell Farmer, but that she and Mary Ann Farmer would "have the house and . . . the surroundings" for the rest of their lives. She subsequently conveyed the tract to Terrell Farmer by warranty deed — but did not reserve the promised life estate. Nevertheless, Terrell Farmer honored his

mother's promise until he conveyed the tract to his son in 2015. His son honored it, only until Terrell Farmer died in 2020. Then, appellee Kim "Bo" Farmer began the process of evicting his aunt. Litigation ensued.

We hold that a jury would be authorized to find that the oral promise is enforceable. The trial court erred in holding that a statutory exception to the statute of frauds is unavailable on the basis that Mary Ann Farmer cannot show "entry into possession pursuant to the gift" and on the basis that the house and its surroundings were not adequately described. Alternately, we hold that the evidence would authorize a jury to find merit in her unjust enrichment claim. And consequently, we hold that a jury would be authorized to find merit in her derivative claim for attorney fees.

1. *Facts*

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

*Jones v. Kirk*, 290 Ga. 220, 221 (719 SE2d 428) (2011) (citation and punctuation omitted).

So viewed, the record shows that Mary Ann Farmer and Terrell Farmer are the children of Rose Mary Farmer and George Washington ("Pete") Farmer. In 1953, Pete Farmer purchased 23.62 acres of land in Hall County, Georgia, and moved his family into the original home on that property (the "home place").

Then, in 1971, Pete Farmer sold six acres of his land to his son, Terrell Farmer. Terrell Farmer built a house on that land and lived there until his death in 2020. Terrell Farmer's son, appellee Bo Farmer, currently resides in that house.

In 1983, Pete Farmer died and his remaining 17.62 acres of land were conveyed to Rose Mary Farmer under his will. His will, and substantially identical language in his wife's will, set out a metes and bounds description of "the home place," which is set out in the margin.[1] Notwithstanding that metes and bounds description, the 17.62-acre tract has never been subdivided, the 3-acre tract has not been platted, and the

---

[1]     [T]he home-place . . . [consists] of approximately three (3) acres [of the 17.62-acre tract], fronting on the highway between Gainesville and Cleveland, beginning at [Terrell Farmer's] line . . . and running along the right of way of said Cleveland Road or Highway the entire distance of [Pete Farmer's] property line opposite that of [Terrell Farmer's], and running back between the two (2) property lines to the creek in the rear.

description of the tract in each will does not establish the precise location of the home place on the 17.62-acre tract.

Mary Ann Farmer lived at the home place for most of her life. She moved into it with her parents in 1953 when she was one year old. Around 1972, she lived elsewhere for a year while she was married. Then, in 1987, she moved out and lived on her own for several years.

During this time, Rose Mary Farmer repeatedly asked her to return to the home place. Mary Ann Farmer refused her mother's requests until 1995, when Rose Mary Farmer was hospitalized and her doctors would not allow her to return home alone. Rose Mary Farmer told her daughter that she "would make everything right" if Mary Ann Farmer brought her home and stayed with her at the home place. Although Mary Ann Farmer "did not know exactly what [her mother] meant by that," she moved back to the home place to care for her mother in spring or early summer of 1995.

Then in late June of 1995, Rose Mary Farmer called a meeting with her two children and told them she had decided to give the land to Terrell Farmer, but that she and Mary Ann Farmer would "have the house and . . . the surroundings" for the rest of their lives. Rose Mary Farmer did not elaborate on what she meant by

"surroundings," but Mary Ann Farmer interpreted this word to include the "yard, meaning grass, trees, garden," and believed that this arrangement was how her mother intended to "make everything right." Mary Ann Farmer and Terrell Farmer looked at one another and said, "Okay," so their mother knew that they understood and accepted her plan.

In August 1995, Rose Mary Farmer transferred fee simple title to her 17.62 acres by warranty deed to Terrell Farmer. But, she did not reserve a life estate to herself or Mary Ann Farmer in the deed. Nevertheless, Rose Mary Farmer and Mary Ann Farmer continued to live together in the home place until September 1995, when Rose Mary Farmer was placed in a nursing home. Mary Ann Farmer continued to reside at the home place on her own, even after her mother died in 2002, and has spent approximately $46,000 on repairs and renovations for the house since 1995.

In 2015, Terrell Farmer conveyed the 17.62 acres to his son Bo Farmer without reserving a life estate for Mary Ann Farmer. Even so, Mary Ann Farmer continued to reside undisturbed at the home place until shortly after her brother died in March 2020.

In June 2020, Bo Farmer sent his aunt an eviction letter notifying her that he was terminating her "tenancy at will." Thereafter, Mary Ann Farmer filed suit against her nephew. In her complaint, she sought specific performance of her mother's oral promise of "a life estate in the home place and its premises – three (3) acres as generally described in the Last Will and Testament of Rose Mary Farmer," or, in the alternative, $46,000 in damages for unjust enrichment concerning the improvements she made to the home place. She also sought, among other things, attorney fees and expenses of litigation.

Bo Farmer moved for partial summary judgment on the issues of specific performance, unjust enrichment, and attorney fees. Following a hearing, the trial court granted Bo Farmer's motion. This appeal followed.

2. *Enforceability of the promise to convey a life estate*

In two related enumerations of error, Mary Ann Farmer contends that the trial court erred by entering a partial summary judgment that rejected her claim for a specific performance order enforcing her right to a life estate. Specifically, she argues that the court erred in holding that there was no evidence that she entered into

possession pursuant to the gift of a life estate, and that the trial court erred in holding that the land at issue was not sufficiently described. We agree.

Under Georgia's statute of frauds, any contract concerning an interest in real property must be in writing. See OCGA § 13-5-30 (a) (4). But OCGA § 23-2-132 sets out an exception that obtains here:

> Specific performance will not be decreed of a voluntary agreement or merely gratuitous promise. If, however, possession of lands has been given under such an agreement, upon a meritorious consideration, and valuable improvements have been made upon the faith thereof, equity will decree the performance of the agreement.

Under this statute, our Supreme Court has explained, the party seeking specific performance must show: "(1) The promise to give; (2) a meritorious consideration; (3) an entry by him into possession in pursuance of the gift and (4) that on faith thereof he made valuable improvements." *Milton v. Milton*, 192 Ga. 778, 780 (1) (16 SE2d 573) (1941). Also, "the land involved must also be sufficiently described." Id.

(a) *Entry into possession*

The trial court held that Mary Ann Farmer could not meet the third requirement set out in *Milton* — entry into possession pursuant to the gift — because

7

she "had already lived in the home long before any promise of a life estate," and "[n]othing in the record establishes that [she] took possession of the home or surrounding property in response to the 1995 conversation" at which the promise was made.

We disagree. In reaching this conclusion, the trial court apparently determined that the requisite entry can only be accomplished if the donee is absent from the land when the oral promise is made. This narrow interpretation, however, imposes a requirement not contemplated by the plain language of the statute. OCGA § 23-2-132 simply requires that "possession of lands [have] been given." Indeed, the Supreme Court in *Milton*, supra, held that the requisite possession is "possession in law." 192 Ga. at 780 (2); see also *Coleman v. Coleman*, 265 Ga. 568, 569 (1) (459 SE2d 166) (1995) (wife's continued possession of property established possession element of specific performance claim under OCGA § 23-2-132).

Here, there is evidence that Mary Ann Farmer entered into possession in law based on her mother's promise of a life estate. Mary Ann Farmer testified that after she moved out to reclaim her independence, she rebuffed her mother's repeated requests to return home for years, and only returned to the home place after her

mother's promise to "make everything right" — a promise which Mary Ann Farmer claims her mother later "clarified" during the June 1995 meeting as the right to live in the home place for the rest of her life. Then, after Rose Mary Farmer had conveyed the land to Terrell Farmer, Mary Ann Farmer continued to live in the home place after her mother went to a nursing home, for more than 20 years after she subsequently died, and even after her brother later conveyed the land to his son. Under these circumstances, a trier of fact could find that Mary Ann Farmer's continued possession of the home place was on reliance of her mother's promise of a life estate. See *Fox v. Washburn*, 264 Ga. 617, 618 (1) (449 SE2d 513) (1994) (parties' conduct over eight years presented jury questions as to credibility and intent of the agreement); see also *Williams v. McElroy*, 35 Ga. App. 420, 421 (133 SE 297) (1926) (whether husband relinquished possession to wife was jury question, noting that possession among family members living in the same house is not subject to the same standard as among strangers).

(b) *Sufficiency of the description of the property*

Bo Farmer also contends that Rose Mary Farmer's promise was too vague to sufficiently identify the land involved. We disagree. The test as to the sufficiency of

9

the description of property is "whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable." *Gold Creek SL, LLC v. City of Dawsonville*, 290 Ga. App. 807, 809 (1) (660 SE2d 858) (2008) (citation and punctuation omitted). "It is only when a description is manifestly too meager, imperfect, or uncertain to serve as adequate means of identification that the court can adjudge the description insufficient as a matter of law." *Deljoo v. SunTrust Mortgage*, 284 Ga. 438, 440 (668 SE2d 245) (2008) (citation and punctuation omitted).

In light of the description of the home place in Pete Farmer and Rose Mary Farmer's wills, as well as the extent of Mary Ann Farmer's use of the property over the past two decades, we conclude that an issue of fact exists as to the identification of the land involved. Thus, summary judgment on this ground was improper. See *White v. Plumbing Distributors, Inc.*, 262 Ga. App. 228, 230 (1) (585 SE2d 135) (2003) (holding that, under the statute of frauds, "a description which is vague will be sufficient if its precise location may be determined upon competent parol evidence").

3. *Unjust enrichment*

Mary Ann Farmer also argues that the trial court erred by ruling that she could not succeed on her alternative claim for unjust enrichment because she had no expectation that Bo Farmer would be responsible for the costs of any repairs or improvements, and she expected to benefit from the improvements herself. We agree. The principle is not so narrow.

"Unjust enrichment applies when as a matter of fact there is no legal contract, but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." *Engram v. Engram*, 265 Ga. 804, 807 (2) (463 SE2d 12) (1995) (citation and punctuation omitted).

> The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received; otherwise the party has been unjustly enriched at the expense of another and, in fairness and good conscience, must reimburse the other to the extent of the value conferred. Inherent in unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon them by another and failed to stop the act or to reject the benefit.

*Crook v. Foster*, 333 Ga. App. 36, 39 (1) (775 SE2d 286) (2015) (citation and punctuation omitted). Nevertheless, "[t]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. Thus, one who makes a gift or voluntarily pays money which she knows she does not owe confers a benefit, but she is not entitled to restitution." Id. at 39-40 (1) (citation and punctuation omitted); see also *Roberts v. Smith*, 341 Ga. App. 823, 829 (2) (801 SE2d 915) (2017) ("Unjust enrichment . . . does not apply when the conferred benefit was a gift or voluntary payment.").

Here, there is evidence that for over 20 years, Mary Ann Farmer made repairs and improvements under the belief that she had a life estate in the home place. There is no suggestion she made the payments gratuitously or with knowledge that she lacked any interest in the property. See OCGA § 44-6-83 (a life tenant owes a duty to the remaindermen to preserve and protect the property); compare *Morris v. Britt*, 275 Ga. App. 293, 295 (1) (620 SE2d 422) (2005) (no right to an equitable recovery where tenants intended to purchase the property and exclusively benefit from improvements).

12

Although Bo Farmer argues that he neither authorized nor consented to the improvements, and thus cannot be responsible for the costs thereof, the evidence on this point is conflicting. The record shows that Bo Farmer lived in close proximity to his aunt for most of his life and knew that she had lived in the home place since 1995. But when Bo Farmer took over the property, he neither told his aunt about the change of ownership nor clarified the terms of her occupancy with her or his father. Further, in the five years he owned the property before attempting to evict his aunt, he never obtained a key to the home place, never went inside, and never made any upgrades or repairs to the home place itself. This evidence would allow a trier of fact to infer that Bo Farmer allowed his aunt to improve property under the belief that she had a legal claim, and creates an issue of fact as to whether Bo Farmer was on notice of his aunt's repairs and improvements. See *Regional Pacesetters, Inc. v. Halpern Enterprises*, 165 Ga. App. 777, 782-783 (2) (300 SE2d 180) (1983) (whether defendant's conduct induced plaintiff to expend money which unjustly inured to the defendant's benefit was a jury question); see also *Whiten v. Murray*, 267 Ga. App. 417, 421 (2) (599 SE2d 346) (2004) (possession of land constitutes notice of the occupant's rights, and ignorance of a fact, due to negligence or lack of inquiry, is equivalent to knowledge in fixing the

parties' rights). The extent of the benefit conferred on Bo Farmer — if any — is a question for the trier of fact. See *Zampatti v. Tradebank Intl. Franchising Corp.*, 235 Ga. App. 333, 340 (5) (508 SE2d 750) (1998).

Under these circumstances, a claim for unjust enrichment may lie. See *Foster*, 333 Ga. App. at 40 (1); *Auburn Maranatha Institute v. Georgia Korean Church*, 232 Ga. App. 415, 416 (2) (501 SE2d 846) (1998). Accordingly, the trial court erred in granting summary judgment on this claim.

4. *Attorney fees*

Based on our holdings in Divisions 1 and 2, we reverse the grant of summary judgment on Mary Ann Farmer's claim for OCGA § 13-6-11 attorney fees. See, e.g., *Jamal v. Hussein*, 237 Ga. App. 779, 785 (3) (515 SE2d 407) (1999) (reversing grant of summary judgment on attorney fees in light of holding that summary judgment on main claim was improper).

*Judgment reversed. Doyle, P. J., concurs. Gobeil, J., concurs in Divisions 1, 2, and 4, and in judgment only in Division 3.*